UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CARL L. MOONEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 3:05-cv-00036AS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Carl L. Mooney ("Plaintiff"), appeals the denial of his application for Social Security Disability Income Benefits ("DIB"). He argues that the decision to deny benefits was not supported by substantial evidence. The specific areas in dispute relate to the ALJ's assessment of Plaintiff's back impairment and status-post colostomy and their effect on his residual functional capacity ("RFC").

Plaintiff applied for DIB on November 8, 2001, alleging an onset date of March 26, 2001. This application was denied at the state agency level and after a hearing before an ALJ. The ALJ found that Plaintiff was not disabled because he could perform his past relevant work as a security guard. The Appeals Council denied Plaintiff's request for review and the ALJ's decision stands as the Commissioner's final decision in this matter. Plaintiff now seeks judicial review of the Commissioner's final decision under authority of 42 U.S.C. §§ 405(g) and 1383(c)(3).

**I.   BACKGROUND**

Plaintiff is forty-seven years old. His past relevant work experience was as a security guard

and an electronic assembler (Tr. 78, 326). Plaintiff claimed that he could no longer work due to arthritis in the lower back, dislocated and ruptured discs, and needing to wear a colostomy bag (Tr. 16, 41-43, 47).

**A.     Medical Evidence**

In March 2001, Plaintiff was involved in an automobile accident and thereafter complained of back pain (Tr. 95). Byron W. Thomas, M.D., prescribed a nonsteroidal anti-inflammatory medication and a muscle relaxant, and referred Plaintiff to physical therapy (Tr. 95). After five physical therapy sessions, Plaintiff reported that his functioning had improved from twenty-five to forty percent (Tr. 91).

In May 2001 Plaintiff reported to Dr. Thomas that he was feeling "significantly better;" he complained only of pulling sensations and no sharp pains (Tr. 90). Dr. Thomas prescribed a non-steroidal anti-inflammatory medication and instructed Plaintiff to continue his physical therapy program (Tr. 90). Approximately two weeks later, Plaintiff told his physical therapist that his symptoms remained the same and that the therapy did not seem to have a significant effect on his symptoms; as a result, the therapist discharged Plaintiff from the program in June 2001 (Tr. 88-89). The same month, Plaintiff complained of continued leg pain (Tr. 87). Dr. Thomas prescribed a combination narcotic and analgesic medication, and ordered a magnetic resonance imaging (MRI) study (Tr. 87). This study revealed a disc extrusion and moderate canal stenosis at the L4-5 level, and a diffuse disc bulge at L5-S1 on the left with neural foraminal narrowing (Tr. 85-86). Dr. Thomas referred Plaintiff to a neurosurgeon for further evaluation (Tr. 85).

Carl Bevering, III, M.D., a neurosurgeon, examined Plaintiff in July 2001 (Tr. 274). Dr. Bevering documented Plaintiff's antalgic gait with a shortened stride, normal sensation,

symmetrical deep tendon reflexes, and 5/5 strength except for 4++ strength of his bilateral plantar flexions[1] (Tr. 274). Dr. Bevering recommended conservative treatment, including a nonsteroidal anti-inflammatory medication, a muscle relaxant, and a referral to Memorial Hospital Pain Clinic for epidural steroid injections (Tr. 274).

In July 2001, Harriet Hamer, M.D., examined Plaintiff at Memorial Hospital Pain Clinic, (Tr. 258-59). She documented Plaintiff's normal gait, negative straight leg raise test, slight atrophy of his left calf, symmetrical sensation to light touch, and 5/5 motor strength except for 4/5 strength at the right hip flexor (Tr. 259). Dr. Hamer reported that Plaintiff's deep tendon reflexes were +0 in his left ankle, +1 in his right ankle, and +2 in his knees (Tr. 259). Dr. Hamer recommended treatment with a series of epidural steroid injections, a physical therapy program, and a nonsteroidal anti-inflammatory medication (Tr. 259). Dr. Hamer administered epidural steroid injections in August and October, 2001 (Tr. -233-35, 251). In August 2001, Plaintiff reported that he was eighty percent better and that his average pain was three out of ten (Tr. 252, 255). In October, Plaintiff complained of increased pain; he rated his average pain as four out of ten (Tr. 255). Later that month, he reported that he had good days and bad days; he stated that he did not experience any leg pain, but he did experience tail bone pain, which he rated as three to four out of ten (Tr. 254).

In October 2001, Plaintiff commenced a physical therapy program (Tr. 206). Plaintiff complained of sharp and constant pain in his lumbar spine, with radiating symptoms down his legs; he rated his pain as four on a ten point scale (Tr. 206). He also had secondary complaints of central lumbar spine achiness, which he rated as two on a ten point scale (Tr. 206). Plaintiff denied any numbness or tingling (Tr. 206). Throughout late October and early November 2001, Plaintiff generally reported that he felt good and had no pain (Tr. 204-05). A physical therapist recommended

that Plaintiff be discharged from the program the following week if he continued to be symptom free, and Dr. Hamer agreed with this recommendation (Tr. 203-04).

In November 2001, Plaintiff complained of increased pain, and Dr. Bevering noted an absence of reflexes in Plaintiff's legs (Tr. 183, 252, 272-73). Dr. Bevering ordered a lumbar myelogram and post-myelogram computed tomography (CT) scan, which revealed a large central disc herniation at the L4-5 level causing severe canal stenosis and obliteration of the thecal sac, and a broad-based posterior disc protrusion at the L5-S1 level which abutted both traversing S1 nerve roots, and neural foraminal narrowing (Tr. 180-81). On November 29, 2001 Dr. Bevering performed a L4-5 laminectomy with diskectomy, and a L5-S1 diskectomy (Tr. 184-85).

On December 14, 2001, Plaintiff was admitted to the hospital due to complaints of gradually increasing left leg pain (Tr. 208-09). Dr. Bevering ordered another MRI study, which revealed a possible recurrent herniated disk at L4-5 and L5-S1, which pushed on the thecal sac (Tr. 208-11, 214-15, 268). Dr. Bevering noted that Plaintiff likely had some nerve root compression, and that it did not appear that the disk herniation had been relieved, though he observed that postoperatively, Plaintiff had experienced improvement (Tr. 211). Dr. Bevering diagnosed a postoperative recurrence of radiculopathy at L5 and possibly at S1 (Tr. 211). Dr. Hamer administered a nerve root block, which resulted in gradual reduction of Plaintiff's pain, but not full resolution; Dr. Bevering released Plaintiff from the hospital on December 17, 2001 (Tr. 208, 212).

At the request of the state agency, A. Dobson, M.D., and B. Whitley, M.D., reviewed the record evidence in January and July 2002, respectively, and concluded that Plaintiff could perform light work that involved only occasional postural activities such as climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 218-25, 276-83).

From January through March 2002, Dr. Hamer administered epidural nerve root blocks and epidural steroid injections (Tr. 227-31, 237-41, 246). Also in January 2002, Plaintiff commenced a physical therapy program; at the start of the program, he rated his pain as five to six on a ten-point scale (Tr. 269). Dr. Bevering opined that surgery was not an option, as Plaintiff's MRI study did not clearly show a recurrent disc herniation (Tr. 268). He further noted that Plaintiff's examination did not support a radiculopathy; he recommended continued conservative treatment (Tr. 268).

At a follow-up visit in February 2002, Plaintiff reported that he was "feeling better;" he stated that while he continued to experience pain, it was not debilitating (Tr. 268). Dr. Bevering documented Plaintiff's questionably positive straight leg raise test, normal strength, and absent Achilles reflexes (Tr. 268). Dr. Bevering ordered x-rays, which revealed status-post bilateral laminectomies at L4 and L5 and evidence of underlying degenerative disc disease at the L4-5 and L5-S1 levels with what appeared to be an increase in the severity of the narrowing of the disc spaces at these levels, and an apparent stable restrolisthesis of L5 relative to S1 (Tr. 267). By late March 2002, Plaintiff reported that he had improved, and he rated his pain as three or four on a ten point scale (Tr. 238-39).

In April 2002, Plaintiff reported that he did not have any low back pain, though he complained of upper thoracic pain and calf pain that he rated as one to two on a ten-point scale; he stated that he felt he had experienced eighty percent improvement (Tr. 266). Later that month, Plaintiff reported that he had experienced seventy to seventy-five percent improvement; he rated his pain as one or two on a ten-point scale (Tr. 300). A therapist noted that Plaintiff had met all of his goals, and he was discharged from the program due to his decreased pain (Tr. 300).

The same month, Robert A. Yount, M.D., a neurosurgeon, reported that Plaintiff was

5

"coming along pretty well," and that he only occasionally had a little bit of tightness in his left calf, but was primarily free of leg pain (Tr. 299). Dr. Yount noted that Plaintiff did not seem very well motivated, and that he seemed happy that he was not working (Tr. 299). Dr. Yount released Plaintiff to return to his past job as a security guard (Tr. 299). In particular, he restricted Plaintiff from lifting more than twenty-five pounds (Tr. 299). He further advised Plaintiff to gradually increase his work day, from a maximum of six hours per day the first week, to a maximum of eight hours per day, and then to twelve hour days (which was Plaintiff's normal work schedule) (Tr. 299). Dr. Yount commented that Plaintiff needed to continue his back exercises, though he felt Plaintiff was "going to be slack with this" (Tr. 299).

In July 2003, Dr. Hamer administered two epidural steroid injections (Tr. 305-06). The following month, Todd Graham, M.D., a physiatrist, examined Plaintiff at the request of Dr. Hamer (Tr. 307-10). Dr. Graham documented Plaintiff antalgic gait, self-limited thoracolumbar flexibility, good strength with no focal deficit, and bilaterally diminished reflexes at the ankles (Tr. 307). Dr. Graham concluded that Plaintiff was "significantly disabled" (Tr. 307).

**B.     Vocational Expert Evidence**

Christopher Young, a vocational expert ("VE"), appeared and testified at the hearing (Tr. 326-28).  The VE reported that Plaintiff's past work was as a security guard and an electronic assembler, both of which were unskilled and required a light level of exertion to perform (Tr. 78, 326).  When asked to consider a hypothetical individual who was limited to light work that involved only occasional postural activities such as bending, twisting, crouching, crawling, and kneeling, the VE testified that an individual of Plaintiff's age, education, and work history with those limitations could perform Plaintiff's past work as a security guard and as an electronic assembler, both as he

6

performed the jobs and as the jobs were normally performed (Tr. 327). The ALJ considered the VE's testimony and found that Plaintiff could perform his past relevant work as a security guard (Tr. 20). Thus, he concluded that Plaintiff was not disabled at the fourth step of the sequential evaluation set forth at 20 C.F.R. §§ 404.1520, 416.920 (Tr. 20).

C.    **The ALJ's Decision**

The findings of the ALJ were as follows:

1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and was insured for benefits through the date of this decision.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.    The claimant's back pain is a severe impairment, based upon the requirements in the Regulations.

4.    This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.    The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment.

7.    The claimant has the residual functional capacity for light work, with only occasional climbing, balancing, stooping, kneeling, crouching, and crawling.

8.    The claimant's past relevant work as security guard did not require the performance

7

of work-related activities precluded by his residual functional capacity.

9. The claimant's medically determinable back pain does not prevent the claimant from performing his past relevant work.

10. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the date of the decision.

## II.   STANDARD OF REVIEW

This court's review of the Commissioner's decision is a limited one.  Unless there is an error of law, the court will uphold the Commissioner's findings of fact if they are supported by substantial evidence.  *Griffth v. Callahan*, 138 F.3d 1150, 1152 (7th Cir. 1998).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971).  In making a substantial evidence determination, the court will review the record as a whole, but will not reevaluate the facts, re-weigh the evidence or substitute its own judgment for that of the Commissioner.  *Griffth*, 138 F.3d at 1152; *Brewer v. Chater*, 103 F.3d 1384, 1391 (7th Cir. 1997).  That being said, the ALJ must "build an accurate and logical bridge between the evidence and the result."  *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

With respect to credibility determinations, the ALJ is in the best position to observe the demeanor and veracity of the testifying witnesses.  *Griffth*, 138 F.3d at 1152.  The court will not disturb the ALJ's weighing of credibility so long as those determinations are based on some support in the record and are not "patently wrong."  *Id.*; *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). However, the district court is required to critically review the evidence and not simply rubber-stamp the Commissioner's decision.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

8

### III.   DISCUSSION

"Benefits are available only to those individuals who can establish disability under the terms of the Social Security Act." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Under section 423(c)(1)(B)(1), it is well-established that to receive benefits, a disability must have begun or had its inception during the period of insured status. *Bastian v. Schwiker*, 712 F.2d 1278, 1280 (8th Cir. 1983); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir.), *cert. denied*, 444 U.S. 952 (1979). The Seventh Circuit has established that a claimant has the burden of establishing that she is disabled within the meaning of the Social Security Act on or before the date her insured status expired. *Estok*, 152 F.3d at 640; *Meredith v. Bowen*, 833 F.2d 659 (7th Cir. 1987); *Owens v. Heckler*, 770 F.2d 1276; 1280 (5th Cir. 1985); *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984); *Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir. 1971). "The law requires that a claimant demonstrate her disability within the proscribed period of eligibility not prior to or subsequent to the dates in question." *Jeralds*, 445 F.2d at 39. Therefore, "any condition that had its onset or became disabling after plaintiff's insured status expired may not be used as a basis for entitlement to disability benefits." *Couch v. Schweiker*, 555 F. Supp. 651, 654 (N.D. Ind.1982). Plaintiff bears the burden of showing through testimony and medical evidence supported by clinical data and laboratory diagnosis that he was disabled during the period in which he was insured. *Jeralds*, 445 F.2d at 38-39; See also *Reading v. Matthews*, 542 F.2d 993, 997 (7th Cir. 1976).

The claimant must show that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

9

12 months." 42 U.S.C. § 423(d)(1)(A). The regulations to the Act create a five-step inquiry in determining whether a claimant is disabled. As previously discussed, the ALJ must consider the applicant's claim in the following sequence:

> (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. *Clifford*, 227 F.3d at 868; citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

"An affirmative answer leads either to the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. *Clifford*, 227 F.3d at 868. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that the claimant is not disabled." *Id.* The initial burden in steps one through four is on the plaintiff; only at step five does the burden shift to the Commissioner. *Id.*

The Plaintiff argues that Social Security failed to develop the record, that the ALJ failed to explain his reasons for differing from the Medicaid Determination of Disability, that the medical opinions on which the ALJ most relied show Plaintiff to have been disabled for more than 12 months, that the ALJ wrongly disregarded the medical opinion of Dr. Graham, and that the details of daily life, as portrayed in the ALJ's decision, misstate Plaintiff's condition.

A.  **Social Security's development of the record**

The Plaintiff contends that although Social Security was aware of the existence of the Plaintiff's eligibility for Medicaid benefits, neither Social Security's Disability Determination Service nor the Office of Hearings and Appeals ever requested that the Indiana Medicaid office provide medical information or records of any kind. The Plaintiff further contends that this oversight is a violation of the duty Social Security has to develop the medical evidence in a case.

However, the Defendant asserts that while the ALJ has the responsibility to make a reasonable effort to develop the record, the ALJ satisfied that duty.  Further, the Defendant argues that the Plaintiff, who was represented by an attorney, was reminded of his responsibility to obtain, or make the ALJ aware of, any relevant medical records.  The claimant has the responsibility for obtaining and submitting evidence.  *See* 20 C.F.R. §§ 404.704.  If a claimant does not submit evidence, an adjudicator will render a decision based on the evidence in the record.  *See* 20 C.F.R. §§ 404.1516, 416.916.  Moreover, Plaintiff was informed that the Agency would assist him in obtaining evidence and that he could review the record prior to his hearing to ensure the completeness of the file (Tr. 35); despite these admonitions, Plaintiff's attorney neither objected to the exhibits at the administrative hearing, nor suggested that more evidence was available or needed (Tr. 316).

**B.      ALJ's explanation for differing from the Medicaid Determination of Disability**

The Plaintiff contends that the ALJ must evaluate another agency's determination that a claimant is disabled and address it in the decision, even though another agency's determination is not binding on Social Security Administration.  The plaintiff asserts that the ALJ did not mention Medicaid at all, let alone evaluate it.

Again, the Defendant asserts that while the ALJ has the responsibility to make a reasonable effort to develop the record, the ALJ satisfied that duty.  Again, Plaintiff was represented by an attorney, was reminded of his responsibility to obtain, or make the ALJ aware of, any relevant medical records, was informed that the Agency would assist him in obtaining evidence, and was informed that he could review the record prior to his hearing to ensure the completeness of the file.  Plaintiff's attorney was silent as to these issues at the administrative hearing.  Regardless, even if

11

the findings of the Indiana Medicaid office had been made part of the record, they were not binding on the ALJ.  *See Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000).

**C.     Plaintiff's disability for more than 12 months**

The Plaintiff contends that he was unable to work from March 24, 2001 to at least April 25, 2002, and was then limited to six hours per day for the first week, then full-time work afterwards, a period of over 13 months.  The Plaintiff further contends that the ALJ should have found him disabled for this closed period.

However, the Defendant contends that the Plaintiff never argued to the ALJ that he was disabled for a closed period and the evidence does not support such a finding.  In March 2001 Plaintiff was injured in an automobile accident (Tr. 95).  He was treated conservatively from March through October 2001.  Dr. Bevering noted that Plaintiff had "minimal to no findingss on physical exam" (Tr. 273).  From August through November 2001, Plaintiff reported that he had good days and bad days, and rated his pain two to four on a ten-point scale (Tr. 204-06, 252, 254-55).  Plaintiff further acknowledged that he had experienced significant improvement (Tr. 252, 254-55).  Plaintiff reported an increase in his pain, and Dr. Bevering performed surgery in November 2001 (Tr. 184-85).  By February 2002 Plaintiff reported that he was "feeling better" and had no complaints of debilitating pain (Tr. 268).  Most importantly, doctors had not placed any restrictions on Plaintiff (Tr. 67).  In April 2002, Plaintiff reported that he had improved by seventy to eighty percent, and he rated his pain as only one or two on a ten-point scale.  The same month, Plaintiff was released from his physical therapy program as he had met all of his goals, and Dr. Yount released him to return to his previous job as a security guard (Tr. 299-300).  The medical evidence does not establish that Plaintiff was disabled from March 24, 2001, through May 3, 2002.

D.      **Medical opinion of Dr. Graham**

The Plaintiff contends that the ALJ gave no significant weight to the medical opinion of Dr. Graham. The plaintiff asserts that the ALJ erred because he did not adopt Dr. Graham's opinion.

However, the Defendant argues that the ALJ was not required to adopt Dr. Graham's opinion, and indeed, he thoroughly explained his rationale for not crediting this opinion.  The ALJ observed that Dr. Graham was not a "treating physician" and only examined the Plaintiff once and made no recommendations for treatment.  The ALJ further explained that Dr. Graham's examination report did not reveal medical findings to support his opinion of disability, as Dr. Graham reported discrepancies in the straight leg raise tests and noted near normal neurological examination findings.  The ALJ reasonably chose to credit the opinions of Drs. Dobson, Whitley, and Yount over Dr. Graham's opinion.  Drs. Dobson and Whitley agreed that Plaintiff could perform light work involving only occasional postural activities.  Dr. Yount agreed that Plaintiff could at least perform light work and return to his past job as a security guard, which required working twelve-hour days.  There is substantial evidence to support the ALJ's finding.

E.      **Plaintiff's details of daily life**

The Plaintiff contends that the ALJ overstated how much he could do in his daily life and overlooked his testimony.  The ALJ found Plaintiff's allegations of disabling symptoms not fully credible (Tr. 19-20).  Plaintiff asserts that this finding was in error.

This court will affirm a credibility determination as long as the ALJ gives specific reasons that are supported by the record for his finding. *See Skarbek v. Barnhart*, 390, F.3d 500 (7th Cir. 2004).  In reaching his finding, the ALJ considered a variety of factors.  For example, the ALJ noted

13

that while Plaintiff testified that he was only able to sit, stand, and walk for a few minutes at a time, the objective medical evidence did not support such severe limitation (Tr. 20).  Dr. Bevering noted that prior to November 2001, Plaintiff had "minimal to no findings on physical exam" (Tr. 273).  Following Plaintiff's surgery, Dr. Bevering reported in January 2002 that his physical examination did not support a finding of radiculophathy (Tr. 268).  The following month, Dr. Bevering noted that Plaintiff was improving; he documented Plaintiff's absent Achilles reflexes, but reported normal 5/5 strength (Tr. 268).

In concluding that Plaintiff's allegations were not entirely credible, the ALJ considered other factors as well.  The ALJ observed that the medical evidence documented that Plaintiff responded to treatment.  While Plaintiff rated his pain as eight or nine on a ten-point scale at the administrative hearing (Tr. 324), his own statements to his doctors did not support this alleged degree of pain.  From August through November 2001, while Plaintiff reported that he had good days and bad days, he frequently rated his pain in only the range of two to four on a ten-point scale, and he acknowledged that he had experienced significant improvement (Tr. 204-06, 252, 254-55).  After his surgery, Plaintiff reported in April 2002 that he had improved by seventy to eighty percent, and he rated his pain as only one or two on a ten-point scale (Tr. 266, 300).  The ALJ also noted that after Plaintiff's surgery, his medication was changed to Darvocet, for mild pain, and Flexeril, a muscle relaxant (Tr. 20).  Plaintiff testified that his medications did not cause any side-effects (Tr. 319).  The ALJ further noted that a doctor released Plaintiff to return to work but questioned his motivation (Tr. 20, citing Tr. 299).  The ALJ also considered Plaintiff's activities, and reasonably concluded that they did not support Plaintiff's allegations of disabling limitations (Tr. 20).  Plaintiff performed household chores, drove, enjoyed playing video games, and did "a lot of walking" (Tr.

14

320-21).

The ALJ properly assessed Plaintiff's allegations, and he reasonably concluded that they were not fully credible.  Having found that Plaintiff retained the RFC to perform a range of light work, the ALJ concluded that Plaintiff could perform his past relevant work as a security guard (Tr. 20).  The ALJ's finding was supported by the VE's testimony, and the VE's testimony constitutes substantial evidence supporting the ALJ's decision that Plaintiff was not disabled because he could perform his past relevant work.

## IV.   CONCLUSION

Based on the foregoing, the Commissioner's final decision that Plaintiff was not disabled and therefore not entitled to disability insurance benefits is hereby **AFFIRMED**.  Plaintiff's Motion for Summary Judgement is thus **DENIED**.

**IT IS SO ORDERED.**

Date: November 3, 2005                                         S/ ALLEN SHARP
                                                              **ALLEN SHARP, JUDGE**
                                                              **UNITED STATES DISTRICT COURT**